UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEDEY DAOUD,

    Plaintiff,

v.

COUNTY OF OAKLAND, BRYAN OTTO, and OTHER UNKNOWN OFFICERS, in their individual and official capacities,

    Defendants.

Case No. 2:18-cv-11224
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS [6]**

Following his arrest in March of 2016, Dedey Daoud was transferred to the Oakland County Jail. Daoud alleges that, while in the booking area of the jail, he suffered an unprovoked attack by law enforcement officers that left him with significant injuries. Thus, Daoud filed this suit against the officers and Oakland County alleging use of excessive force, failure to adequately train or supervise the offending officers, and gross negligence.

Before the Court now is Defendants' partial motion to dismiss Daoud's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The County seeks dismissal of Daoud's *Monell* claims and the officers seek dismissal of the gross negligence and § 1983 claims against them in their official capacities. For the reasons stated below, the Court will grant Defendants' motion.

**I.**

The facts of this case, as alleged in Daoud's complaint, are as follows. *See Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018).

On or about March 22, 2016, Daoud was transferred from the Oak Park Police Department to the Oakland County Jail as a pre-trial detainee. (R. 1, PageID.3.) While Daoud was sitting on a bench in the booking area, officers called for Daoud to approach them, then instructed him "to wave at deputies standing nearby and tell them that he likes racial slurs." (*Id.*) Daoud responded by throwing an empty toothpaste container he was holding into a nearby trash bin. (*Id.*) Then he turned to walk back to the bench he was sitting on. (*Id.*) The officers asked Daoud "if he had a problem." (*Id.*) When Daoud responded in the negative, Officer Bryan Otto and other unnamed officers "pulled [Daoud] into a holding cell, threw him down and pinned him to the ground," "twisted [his] right arm behind his back and hit him multiple times in the head." (*Id.*) Otto told Daoud that "it was his house and not to throw anything away without his permission." (R. 1, PageID.4.)

As a result of the officers' actions, Daoud suffered significant injuries, including an injury to his head. (R. 1, PageID.4–5.)

**II.**

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task"

requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).[1]

## III.

### A.

Daoud brings a *Monell* claim against Oakland County. "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). Daoud alleges Oakland County is liable for failing to train or supervise its officers, as well as by acquiescing to a pattern of unconstitutional conduct.

But Daoud pleads nothing more than legal conclusions.

---

[1] In his response to Defendants' motion to dismiss, Daoud misconstrues the pleading standards of the Sixth Circuit when he suggests that "specificity is not necessary." (R. 9, PageID.56.) His conclusion rests on two errors. First, Daoud cites *Tucker v. Middleburg-Legacy Place*, which states that "specific facts are not necessary" when the complaint fairly notifies the defendant of "the ground upon which it rests.'" 539 F.3d 545, 550 (6th Cir. 2008). As highlighted by Defendants, this case was decided prior to the Supreme Court's decision in *Iqbal*, and thus has little value in guiding the Court's evaluation of a 12(b)(6) motion today. (R. 10, PageID.68.) Second, Daoud cites *Coley v. Lucas County*, 799 F.3d 530, 543 (6th Cir. 2015), to support the idea that "the Sixth Circuit recently affirmed . . . specificity is not necessary, but only fair notice to the defendant by reviewing a complaint in full order 'to do justice.'" (R. 9, PageID.56.) But the court found no such thing. Instead, it simply refuted the argument that a claim should be dismissed because the plaintiffs "did not restate the pertinent factual allegations in the specific causes of action." *Coley*, 799 F.3d at 543. The point is that the positioning of the factual allegations within the complaint does not matter, not that conclusory legal statements are sufficient to state a claim for relief. *Id.*

The Court will start first with the failure-to train-or-supervise claims. Such a claim requires that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [County's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018).

Daoud's complaint states that Oakland County failed to adequately train and supervise its officers on use of force, preventing violations of constitutional rights, and de-escalation. (*See* R. 1, PageID.6.) But this is nothing more than a "formulaic recitation" of one of the elements of Daoud's claim, insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678, 681. More specifically, one way a plaintiff can demonstrate an illegal policy is by showing the "existence of a policy of inadequate training or supervision." See *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). And here, Daoud has alleged nothing more than that. He has failed to identify the practice or policy that formed the basis of his claims. *See Johns v. Oakland Cnty.*, No. 15-12924, 2015 WL 4396065 (E.D. Mich. Aug. 1, 2016); *Flanigan v. Cnty. of Oakland*, No. 15-12504, 2016 WL 304763 (E.D. Mich. Jan. 26, 2016). And because Daoud also "failed to allege in what way training was lacking, the claims amount to mere legal conclusions, which the Court is not bound to accept in deciding this motion." *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 703, 708 (S.D. Ohio 2016).

Even if the Court accepts that Daoud's complaint included a factual basis to support that training or supervision was inadequate, Daoud still needs to sufficiently allege that the inadequacy was the result of deliberate indifference. The Sixth Circuit recognizes two theories of deliberate indifference in this context. *Winkler v. Madison Cnty.*, 893 F.3d 877, 902–03 (6th Cir. 2018); *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016). The first is "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Winkler*,

4

893 F.3d at 903 (citation omitted). The second is failure "to act in response to repeated complaints of constitutional violations by its officers." *Id.* (citation omitted).

Daoud's complaint fails to allege facts to support either theory. He has not alleged any factual basis for how the training was inadequate. He has not alleged how or why an unprovoked attack on a pre-trial detainee in the booking area of the Oakland County jail is a foreseeable consequence of inadequate instruction. And he does not allege any repeated complaints of constitutional violations. Daoud alleges only one constitutional violation—the particular incident involving him.

So Daoud has failed to plead a viable *Monell* claim based on failure-to-train-or-supervise.

Moving on to Daoud's other *Monell* claim, he says Oakland County acquiesced in federal rights violations. To plead a plausible claim, Daoud would have to allege "(1) a clear and persistent pattern of unconstitutional conduct by [the officers]; (2) the [County's] notice or constructive notice of the unconstitutional conduct; (3) the [County's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the policy of inaction was the moving force of the constitutional deprivation." *Winkler*, 893 F.3d at 902.

Like his other *Monell* claim, Daoud pleads the legal conclusions for this claim but not any facts to support them. As mentioned, Daoud's factual allegations reference only a single instance of a constitutional violation. And a single instance is not a "clear and persistent pattern," *Winkler*, 893 F.3d at 902, and cannot lead this Court to "draw . . . a reasonable inference that [the County of Oakland] is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

Daoud argues that the involvement of multiple officers in the attack indicates that "Oakland County permits and encourages its police officers' violations of citizens' constitutional rights by

failing to adequately supervise, review, and discipline its police officers." (R. 9, PageID.58.) But Daoud does not cite any law to support the conclusion that a single event becomes a pattern because it involved multiple people. And this assertion is inconsistent with law in this circuit. *See Winkler*, 893 F.3d at 902.

Daoud's *Monell* claims will be dismissed.

The Court will likewise dismiss Daoud's claims against the officers in their official capacities, because "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). An "[o]fficial capacity suits must still satisfy the 'policy or custom' requirements of *Monell*." *Kentucky*, 473 U.S. at 166. Again, Daoud's complaint fails to do so.

**B.**

Defendants also contend that Daoud's complaint fails to state a claim for gross negligence. Although employees of government agencies are generally immune from tort liability, immunity does not apply if an employee's actions "amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).

While Daoud, again, pleads the necessary legal conclusions for a gross negligence claim, his factual allegations do not support these conclusions. As alleged, the direct cause of Daoud's injuries was the officers' unprovoked attack when they "pulled [Daoud] into the holding cell, threw him" to the ground, pinned him there, and "hit him multiple times in the head." (R. 1, PageID.3.) But this describes an intentional act. And Michigan law does not allow intentional acts, even when

6

couched in terms of a breach of duty, to be the basis of a gross-negligence claim. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010).

Daoud responds that his gross negligence claims are not "fully premised on excessive force." (R. 9, PageID.63.) But, aside from so stating, he does not point to anything that would suggest a separate negligence claim—such as other officers or supervisors who knew about, but failed to stop, the attack. So "[t]he facts which form the basis of the gross negligence accusation are the same as those alleged in the § 1983 excessive force and *Monell* liability claims." *Amerson v. Twp. Of Waterford*, No. 12-10375, 2012 WL 5948044 at *2 (E.D. Mich. Nov. 28, 2012).

As Daoud has failed to plead a plausible claim of gross negligence, that claim must be dismissed.

## IV.

For the reasons stated, Defendants' partial motion to dismiss for failure to state a claim is GRANTED. Counts II and III of the complaint, together with the official-capacity claims in Count I are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: October 18, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, October 18, 2018, using the Court's ECF system.

s/William Barkholz
Case Manager